John WARRINGTON and Shirley Warrington, Plaintiffs–Appellants,

v.

ELGIN, JOLIET & EASTERN RAILWAY COMPANY, a/k/a E.J. & E. Railroad, Defendant–Appellee.

No. 89–2240.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1990.

Decided May 1, 1990.

William S. Spangler, Sr., Spangler, Johnson & Associates, Gus J. Galanos, Merrillville, Ind., for plaintiff-appellant John Warrington.

George W. Gessler, Terence E. Flynn, Gessler, Flynn, Fleischmann, Hughes & Socol, Chicago, Ill., James E. McHie, McHie, Myers & McHie, Hammond, Ind., for defendant-appellee Elgin, Joliet & Eastern Ry. Co.

Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

BAUER, Chief Judge.

Appellants, John and Shirley Warrington, brought suit against the Elgin, Joliet and Eastern Railway Company ("EJ & E") for damages sustained by John Warrington ("Warrington") while he was working at the United States Steel ("USS") Gary Works Facility. The EJ & E is a subsidiary of USS and an independent rail service contractor which performs transportation functions for USS at the Gary facility. At the time of the accident, Warrington was an employee of USS. In his suit, however, Warrington claimed that he was an "employee" of EJ & E for the purposes of establishing liability under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60. He also claimed that the EJ & E was negligent in the performance of its duties. After Warrington had presented his case to the jury, the district court directed a verdict in favor of EJ & E. He now appeals the district court's order. We affirm.

## I.

The accident which gives rise to the present appeal occurred at Yard N of the USS Gary Works Facility. In Yard N, coke, an essential ingredient in the steel-making process, and scrap steel were loaded and unloaded onto gondola cars. Yard N has two railroad tracks, 2N and 2½N, both of which are owned by USS. Track 2½N is a storage track and Track 2N terminates into the "lead track." Along both tracks, scrap steel is loaded and unloaded by USS employees who use bulldozers to move the gondola cars from one location to the other. Along Track 2N, employees of Central Teaming, an independent contractor, load coke onto the gondola cars.

The EJ & E performs two transportation functions at Yard N for USS. It delivers empty cars to Track 2N to be loaded by Central Teaming and then removes the loaded cars from Yard N. It also delivers empty or loaded cars of scrap to be loaded or unloaded, respectively, by USS employees, and removes the cars from the yard when the work is complete. The delivery movement is called a "set." The removal movement is called a "pull." The EJ & E does not move cars within Yard N from Track 2N to Track 2½N and vice versa.

EJ & E's services are triggered by the transmittal of a "710" switch order from the USS Transportation Department, which acts upon a request for movement from a particular USS department. Each USS department needing outside rail service employs this procedure. EJ & E does not have to honor all "710" requests, however. It can cancel for a variety or reasons, including "railroad convenience." At its option, USS may then reorder. The uncontradicted evidence at trial established that EJ & E would not honor a request for a "pull" of less than a full or nearly full track of cars. Although USS still submitted "710" requests in this situation, it did so not with the expectation that EJ & E would remove the cars, but rather to halt the accrual of rental charges on EJ & E's gondola cars.

The day before the accident, John Warrington, who was a gangleader at Yard N, submitted a "710" order to the Transportation Department, requesting that EJ & E "pull" four empty cars from Track N. As expected, EJ & E did not honor the request and Warrington did not reorder, so the next day Warrington asked Donald King, of the USS Mobile Equipment Department, to move the cars to Track 2½N with a bulldozer.

Warrington uncoupled the first four unloaded cars from the remaining loaded cars. King bumped the last loaded car and the unloaded cars began to move rapidly down the track. Two USS employees, "Cigar" and "Big Jack," who were unloading scrap from a car at the other end of the track, stood in the path of the oncoming cars. Warrington ran to catch the cars, jumped aboard and set the brakes of the last car. The loaded cars, however, continued down the track and crashed into the stopped cars on which Warrington was perched. Warrington's legs were severed in the accident.

Warrington filed a claim for workman's compensation against USS and now receives total disability benefits. He later filed suit against EJ & E, alleging that on the day of the accident he was working for EJ & E and therefore was entitled to benefits under FELA. Warrington also included in his complaint two state law counts sounding in negligence. The case was argued to a jury and at the close of Warrington's evidence, EJ & E filed a motion for a directed verdict on all counts. The district court granted the motion and Warrington filed a timely notice of appeal.

## II.

"The standard under which we review the district court's decision to enter a directed verdict is ... the same on appeal as it is in the trial court." *Eggert v. Weisz*, 839 F.2d 1261, 1263 (7th Cir.1988).

> In every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis in original). In applying this standard, we view the evidence in the light most favorable to the non-moving party. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir.1985).

■ The district court directed a verdict on the first count against Warrington because it found that there was no evidence upon which a jury could determine that Warrington was an "employee" of EJ & E for purposes of FELA liability. Under FELA, a covered railroad is liable for negligently causing the injury or death of any person "while he is employed" by the railroad. 45 U.S.C. § 51.

> Under common-law principles, there are basically three methods by which a plaintiff can establish his 'employment' with a rail carrier for FELA purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. See Restatement (Second) of Agency § 227; *Linstead v. Chesapeake & Ohio R. Co.*, 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928). Second, he could be deemed to be acting for two masters simultaneously. See Restatement § 226; *Williams v. Pennsylvania R. Co.*, 313 F.2d 203, 209 (CA2 1963). Finally, he could be a subservant of a company that was in turn a servant of the railroad. See Restatement § 5(2); *Schroeder v. Pennsylvania R. Co.*, 397 F.2d 452 (CA7 1968).

*Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1975).

Warrington, who was an employee of USS at the time of the accident, claims that he established his "employment" with EJ & E under this third method.

In order to prevail under this method, Warrington must demonstrate that USS was acting as a servant of EJ & E at the time of the accident. Section 220(1) of the Restatement (Second) of Agency defines a servant as "a person [or entity] employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *See also Kelley*, 419 U.S. at 326, 95 S.Ct. at 477; *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 198–99 (8th Cir. 1981). Section 220(2) of the Restatement lists various indicia of control which, among others, are instructive in determining servant status.[1] Although these factors are directed at determining whether a particular bilateral arrangement is properly characterized as a master-servant or independent contractor relationship, they are also useful in analyzing a three-party relationship between two employers and an employee. *Kelley*, 419 U.S. at 324, 95 S.Ct. at 476.

Warrington highlights only two pieces of evidence in his effort to show that USS was the servant of EJ & E. First, he points to the "710" order, requesting that EJ & E pull the four cars which were involved in the subsequent accident from Yard N. This, he contends, demonstrates that King and Warrington were doing the work which EJ & E should have done. Second, he excerpts from the testimony of Edward

---

1. Section 220(2) provides in full:

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Tincher, his boss at USS, the following: "if the switch that EJ & E was ordered to make, by the switch order was not made, they [the trainmasters at EJ & E] told me to go ahead and make them myself with whatever means I had to make them with." Warrington claims that this testimony establishes that he moved the four cars at EJ & E's direction and pursuant to its authority.

No matter how one views the above evidence, it simply does not establish EJ & E's control over USS. At the time of the accident, USS employees were not performing EJ & E's work. USS employees regularly moved cars along the tracks and between the tracks using bulldozers owned by USS. EJ & E, on the other hand, was employed by USS to *remove* cars from the tracks. EJ & E's contract with the switchman's union did not prohibit USS from moving cars on USS's own tracks. EJ & E, therefore, did not have to pay its switchmen when USS moved cars using bulldozers. Furthermore, EJ & E did not have the right to tell USS employees how to move cars between the tracks. Although EJ & E may have told Tincher to go ahead and move the cars if it did not show up, it could not compel him to do so. Nor could it tell him or any other USS employees how, where, or when to move the cars. These were decisions made by USS employees. Tincher explicitly testified that EJ & E could not order USS to do anything. For example, if EJ & E had told him not to move the cars with a bulldozer, he would moved them anyway, because, as he testified, "The 'J' [EJ & E] works for the mill [USS]. The mill does not work for the 'J.'" The uncontroverted evidence demonstrated that EJ & E exercised no control over USS when USS moved gondola cars around USS tracks using USS bulldozers, and therefore the district court properly directed the verdict on count 1 against Warrington.

Warrington's second and third counts were state law claims sounding in negligence. In count 2, Warrington claimed that EJ & E owed him a duty to use reasonable care to avoid injuring him. In count 3, Warrington claimed that EJ & E endangered the safety of "Cigar" and "Big Jack" through its negligence and that it was liable for injuries he sustained in attempting to rescue them. The court directed the verdict on these two counts against Warrington, finding that he had not presented any evidence that EJ & E had breached its duty of reasonable care.

To get to the jury on either count, Warrington had to come forward with *some* evidence of negligence by EJ & E. The sum total of Warrington's efforts in this regard is his claim that EJ & E was negligent because Donald King moved the gondola cars using a bulldozer without a coupler. That very well may be true. In fact, a USS post-accident investigation report recommended that USS equip its bulldozers with couplers. The obvious problem with Warrington's endeavor to establish EJ & E's negligence is that Donald King was and is an employee of USS. Warrington attempts to show King's "employment" with EJ & E using the subservant of a servant theory already discussed. As already discussed, however, USS is not a servant of EJ & E. Because Warrington failed to present any evidence of King's "employment" with EJ & E, the district court properly directed the verdict on counts 2 and 3 against Warrington.

For the foregoing reasons, the decision of the district court is

AFFIRMED.