931 F.2d 895
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Anthony Bernard JONES, Plaintiff-Appellant,
v.
CITY OF GARY CONTROLLER'S OFFICE, Chief of the Gary Police
Department, Officer Braobich, Officer Keller, Officer C.
Stevens, Officer G. Bradley, Officer Rivera, and Officer
Cupler, of the Gary Police Department, Defendants-Appellees.
 No. 89-3720.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 12, 1990.*
Decided April 23, 1991.
 
 Before POSNER, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Anthony Jones proceeded without counsel in a civil jury trial against the Gary Controller's Office, the Gary Chief of Police and various officers of the Gary Police Department. In his case, filed pursuant to 42 U.S.C. Sec. 1983, Jones submitted evidence that he had been held for eight days in a Gary city jail cell which had broken windows. During his September stay in 1983 he had not been issued any sheets or blankets and the temperature dropped to near fifty degrees. He also submitted proof that his family members were denied visitation. At that point, however, Jones concluded his evidence. On a motion for a directed verdict the district court found that Jones had failed to establish that the Chief of Police knew of or condoned the conditions in Jones' cell, or that the controller's office or individually named police officers were responsible for the conditions in the Gary city jail. The court entered a directed verdict in favor of all defendants. We affirm.
 
 I.
 
 2
 Early in the morning of September 13, 1983, several Gary police officers arrested Jones on charges of battery following a shooting incident. After being booked on the first floor of the Gary police station two of the arresting officers, Keller and Rivera, left Jones with a "turn-key" or warden who escorted him to the third floor jail.
 
 
 3
 Later on the morning of Jones' arrest, two investigating officers, Cleo Stevens and George Bradley, came to his cell and questioned him about the shooting incident. The officers asked Jones about the location of a gun involved in the shooting. Jones gave them a description of the vicinity of where he thought the weapon was located. Later that day, unable to find the gun, the officers returned and asked Jones to accompany them in their search. Jones left the jail in the company of the officers and with his assistance the gun was found and Jones was returned to the police station. The officers then interviewed Jones in an interrogation room where Jones told them that he wanted cigarettes, that he was cold in his jail cell and that he did not have a blanket. Jones testified that Officer Stevens "was basically asking about the case" but that Stevens also "told us that even though it would get cold in there that we are not to rip open the plastic mattress or else we would get in trouble." Following the interrogation, a turnkey then returned Jones to his jail cell.
 
 
 4
 A private attorney retained to represent Jones met with him in the jail on the evening of his arrest. Jones asked his attorney to make arrangements for him to receive a coat. Some time later a coat was provided to Jones.
 
 
 5
 Two days later on September 15, Officers Stevens and Bradley talked to Jones in the jail to inform him of a warrant issued for him based on a manslaughter charge filed that day in state court. On the next day, September 16, Jones was taken from the jail for an appearance in the Gary City Court on his initial charge of intimidation. His attorney, together with his mother and father were present with Jones in the courtroom. Five days later Jones was transferred from the Gary city jail to the Lake County jail where he was ultimately released on bail.
 
 
 6
 Notwithstanding interrogatories introduced into evidence by Jones which indicated that the Gary city jail was adequately maintained, Jones testified that his cell had broken windows which allowed the rain in and that the temperature in the cell reached the low fifties. He also testified that his bed contained no sheets or blankets. In addition, Jones stated that the toilet and sink in the cell gave off a strong stench and the cell was infested with cockroaches. Moreover, Jones asserted that he was not provided with a change of clothes, soap, toothpaste, a towel, or a wash cloth.
 
 
 7
 On the day of his arrest, Jones' mother and father, accompanied by Jones' attorney, went to the police station. However, while the attorney was able to visit with Jones, his parents were not allowed to see him. Members of Jones' family attempted to visit him on three other occasions but were turned away by a desk sergeant. They were told either that Jones was not being held at the jail or that they could not see him because their names were not on the visitor's list. Jones' brother, Claude, testified that when he spoke with Jones from the street below the police station he noticed that about half of the windows on that side of the building were broken, "like somebody had a rock throwing party."
 
 
 8
 At the close of the plaintiff's case, the district court directed a verdict in favor of all of the defendants. As to the City Controller's Office, the court found that Jones had produced no evidence which indicated any involvement by that office with the operation of the Gary jail. The court noted that as Jones indicated he had sued it only because that department would have to issue the check for any damage award. With regard to the Gary Police Department, the court determined that there was no evidence as to who, if anyone, within the department sanctioned the conditions in the city jail. Furthermore, there was no indication that anyone above the level of an unidentified desk officer knew of the denied family visits. Finally, with respect to the named police officers who arrested Jones and investigated the case, the court found that none had any responsibility for the operation or condition of the Gary jail or the policies involving visitation with prisoners.
 
 II.
 
 9
 We assume that the conditions in the Gary city jail in September of 1983 were as Jones described them, for we take the evidence produced by Jones, the non-moving party, in the light most favorable to him. Warrington v. Elgin, Joliet & Eastern Ry. Co., 901 F.2d 88, 90 (7th Cir.1990).
 
 
 10
 In the case of pretrial detainees, if conditions of confinement constitute punishment or are not incident to any legitimate governmental purpose those conditions may be constitutionally impermissible. Block v. Rutherford, 468 U.S. 576, 584, 104 S.Ct. 3227, 3231 (1984); Bell v. Wolfish, 441 U.S. 520, 538, 99 S.Ct. 1861, 1873 (1979). No rational fact finder could determine that the conditions of confinement in the Gary city jail were incident to any legitimate government purpose. The fact is that the failure to provide a pretrial detainee with a blanket and yet house him in a cell with broken windows which let in cold air and other elements could certainly constitute conditions sufficient for a fact finder to determine that punishment was being inflicted. See Goodson v. City of Atlanta, 763 F.2d 1381, 1387 (11th Cir.1985).
 
 
 11
 However, the decision of the district court to grant a directed verdict in favor of the defendants was not based on the lack of a constitutional violation. The district court simply found that Jones had failed to produce evidence sufficient for the jury to find any defendants in this case liable for the conditions in the Gary city jail. The fundamental issue for us in determining the propriety of the directed verdict involves the same question of law that was before the district court--and thus we give de novo review. Daniel J. Hartwig Associates, Inc. v. Kanner, 913 F.2d 1213, 1221 (7th Cir.1990). Like the district court, we must determine whether any of the evidence produced by Jones would have been sufficient to enable a fact finder to hold any of the defendants liable for the operation and condition of the Gary city jail. Warrington, 901 F.2d at 89.
 
 
 12
 For our analysis under Sec. 1983, we start, in this case, from the premise that Jones was deprived of constitutionally protected rights. However, for Jones to establish liability of the individual defendants he must have shown them to have intentionally caused the deprivations he incurred, and he must also have shown that those individual defendants acted under color of state law. Patrick v. Jasper County, 901 F.2d 561 (7th Cir.1990); Donald v. Polk County, 836 F.2d 376 (7th Cir.1988). With regard to the liability of municipal defendants, the evidence must have demonstrated that the constitutional deprivations were caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the city's] officers." Patrick, 901 F.2d at 565 (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035 (1978)). Unconstitutional deprivations could also have been shown to have resulted from a custom or practice of a municipal defendant undertaken without formal authorization. Sims v. Mulcahy, 902 F.2d 524, 542 (7th Cir.1990).
 
 
 13
 Turning to the facts of this case, however, there was no evidence to show any causal link between a municipal policy or custom and the constitutional deprivations suffered by Jones and thus there could be no municipal liability. There was, in fact, a total lack of any evidence regarding the Gary Controller's Office, and while the district judge analyzed the potential liability of the Gary Police Department (apparently based on an inference of the chief's supervisory authority), it actually appears from the record that the chief of police may have been sued individually. In any event, no evidence at all was produced with regard to the chief of the Gary Police Department. The jury was informed neither of his knowledge of, nor authority with regard to, the operations and conditions of the Gary city jail. Thus, there is no way that the jury could properly have found that he acted intentionally or with even deliberate indifference concerning the conditions of Jones' confinement. See Gibson v. City of Chicago, 910 F.2d 1510, 1523 (7th Cir.1990).
 
 
 14
 Insofar as the named members of the Gary Police Department are concerned they were either arresting or investigating officers. Jones made no evidentiary showing that these officers had any responsibility for or connection with the conditions of jail confinement. Officer Braobich (and apparently officer Cupler who was identified at trial as officer Curly) were described by Jones as merely being at the scene of his arrest. Officers Keller and Rivera were also involved in the arrest and transported Jones to the Gary Police Station where they released him to jail personnel. Finally, according to the evidence, the roles of Officers Stevens and Bradley were limited to investigation of the charges against Jones. Stevens and Bradley had some knowledge of the conditions under which Jones was held and advised Jones not to rip open his mattress. But it was the responsibility of Jones to present evidence that the inaction of Stevens and Bradley with regard to the conditions of Jones' jail confinement involved conduct within the scope of their duties as police officers--and that their inaction was conduct arising under color of state law. Jones did not carry his burden for no such evidence was introduced. Absent from Jones submission of evidence was any information concerning the organization and assignment of responsibilities for the operation of the Gary city jail. Likewise, there was no evidence introduced which dealt with the duties and responsibilities of Gary police officers. This lack of evidence was particularly crucial. Any responsibility that officers Stevens and Bradley might have assumed for the jail conditions of Jones must have arisen from their duties as Gary police officers. Without evidence to form a basis for establishing the scope of their duties as Gary police officers--particularly as they may have related to the care of prisoners in the Gary city jail--there could be no determination that their conduct arose under color of state law. Equally important is whether there was any proof submitted that officers Stevens and Bradley intentionally caused the deprivations Jones suffered. But as Jones himself conclusively stated, he sued officers Stevens and Bradley "merely because they are employees of the City of Gary Police Department". Jones does not claim nor did he submit any evidence that any of the officers named intentionally caused the deprivations he suffered. He further acknowledged in his testimony that none of the individual defendants violated his constitutional rights.
 
 III.
 
 15
 With the absence of any evidence causally linking any of the defendants to the conditions Jones endured in the Gary city jail, the decision of the district court directing the verdict in favor of the City of Gary Controller's Office, the City of Gary Police Chief, and the named officers of the Gary Police Department is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record