941 F.2d 1212
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Harry F. YOUNG, Plaintiff/Appellant,
v.
ILLINOIS CENTRAL RAILROAD COMPANY, formerly known as,
Illinois Central Gulf Railway Company, Defendant/Appellee.
 No. 91-1248.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 7, 1991.
Decided Aug. 19, 1991.
 
 Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and ESCHBACH, Senior Judge.
 
 ORDER
 
 1
 In this action brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq., Harry Young sued his employer, the Illinois Central Railroad Company ("Railroad"). In his complaint, Young alleged that the negligence of the Railroad caused his disabling injuries. The case was presented to a jury. At the close of all the evidence, the Railroad moved for a directed verdict. The district court granted the motion, concluding that Young had not established a causal link between his disability and the Railroad's negligence. We affirm.
 
 I.
 
 2
 Young alleges that he sustained injuries in two separate accidents while working as a foreman for the Railroad. The first was sometime in August 1986. While spreading rocks along the Railroad's right-of-way, Young stepped into a hole that was hidden by brush and weeds and fell backwards, injuring his hips and back. The second injury occurred in September 1986. While Young was working in a muddy, slippery area in the trackage, he slipped and fell, his back striking the rail.
 
 
 3
 Young testified that although he experienced intense pain after each fall, he continued to work and did not seek medical attention or miss any work because of back problems. In April 1988, Young experienced severe pain radiating down his left leg that got progressively worse. He was diagnosed as having two ruptured discs for which he was operated.
 
 
 4
 At trial, there was medical testimony from three doctors. Dr. Calixto Aquino, Young's family doctor since 1985, testified that Young had seen him on eight separate occasions for various problems between September 1986 and April 1988. Young did not complain of back problems or an inability to lift during those visits. In December 1987, Dr. Aquino performed a physical examination of Young at which Young did not provide any history of a spinal injury or complaints of back pain. Dr. Aquino could not state with any reasonable degree of medical certainty that Young had shown any indication of having suffered an injury that caused the ruptured discs.
 
 
 5
 Dr. M.L. Mehra, a neurologist, testified that Young related to him a history of back pain dating back to 1979 but did not mention the falls in 1986. In response to a long hypothetical question about whether the accidents in 1986 played a part in causing or triggering Young's ruptured disk, Dr. Mehra answered that it would be possible, though unusual. He refused to say with any reasonable degree of medical certainty that the accidents in 1986 caused the ruptured discs discovered in 1988. Id.
 
 
 6
 On April 29, 1988, Dr. David Mack, an orthopedic surgeon, performed a laminectomy on Young's back. The medical history in Dr. Mack's records includes the two accidents in 1986. Dr. Mack opined that the ruptured discs were caused by degenerative disc disease that had been progressing gradually since 1978. He testified that although the two accidents in 1986 were the sort of trauma that could aggravate a preexisting degenerative disc condition, it was doubtful that they did here, since Young did not require immediate medical attention after the accidents. When asked whether he could say with any reasonable degree of medical certainty that the two incidents in 1986 actually did aggravate any condition that he had, Dr. Mack answered: "No, I don't know as if I can say that one way or the other."
 
 II.
 
 7
 This court reviews a district court's decision to enter a directed verdict de novo. Warrington v. Elgin, Joliet & Eastern Ry. Co., 901 F.2d 88, 89 (7th Cir.1990). Viewing the evidence in the light most favorable to the non-moving party, id. at 90, the inquiry is whether there is any evidence upon which a jury could reach a verdict "for the party producing it, upon whom the onus of proof is imposed." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).
 
 
 8
 FELA was enacted by Congress in 1906 in order to provide a federal remedy for railroad employees who suffer personal injuries while on the job due to the negligence of either their employer or their fellow employees. Robert v. Consolidated Rail Corp., 832 F.2d 3, 5-6 (1st Cir.1987). "FELA is a broad remedial statute, and ha[s] adopted a 'standard of liberal construction in order to accomplish [Congress'] objects.' " Atchison T. & S.F.R. Co. v. Buell, 480 U.S. 557, 562 (1987) (quoting Urie v. Thompson, 337 U.S. 163, 180 (1949)). "[U]nder the FELA, 'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury....' " Harbin v. Burlington Northern R. Co., 921 F.2d 129, 131 (7th Cir.1990) (quoting Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957)). Thus, "[t]he evidence required for a finding of negligence dictates a corresponding 'slightest' hurdle for avoiding a directed verdict." Wilson v. Chicago, Milwaukee, St. Paul, & Pac. R., 841 F.2d 1347, 1353 (7th Cir.1988).
 
 
 9
 On appeal, Young argues that the district court employed a standard in granting the motion for a directed verdict that was too harsh and rigid for a FELA case. The Railroad counters that despite FELA's lower standard of proof, a plaintiff still bears the burden of presenting evidence from which a jury could conclude a "probable" or "likely" causal relationship as opposed to merely a "possible" one. Edmonds v. Illinois Cent. Gulf R.R. Co., 910 F.2d 1284, 1288 (5th Cir.1990) ("plaintiff must show more than a possibility that a causal relation existed") (citing Moody v. Maine Cent. R.R., 823 F.2d 693, 695 (1st Cir.1987)).
 
 
 10
 We conclude that, notwithstanding FELA's relaxed standard of proof, Young has not overcome the "slightest hurdle." Here, the medical evidence presented was too speculative to establish a causal relationship between the Railroad's negligence and Young's injuries. Moore v. Chesapeake & Ohio Ry. Co., 340 U.S. 573, 578 (1951) ("Speculation cannot supply the place of proof."). None of the medical experts stated that there was a causal connection between Young's accidents in 1986 and his ruptured discs in 1988. See Mayhew v. Bell S.S. Co., 917 F.2d 961, 964 (6th Cir.1990) ("a medical expert must be able to articulate that it is likely that the defendant's negligence, or more than possible that the defendant's negligence, had a causal relationship with the injury and disability for which the plaintiff seeks damages"). The remote possibility of a causal link between Young's injuries and the Railroad's negligence is not probative evidence of causation.
 
 
 11
 Accordingly, the decision of the district court is AFFIRMED.