# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN SCHMIDT,

    *Plaintiff-Appellant,*

   v.

BURLINGTON NORTHERN AND SANTA
FE RAILWAY COMPANY, WESTERN
FRUIT EXPRESS, INC., a Delaware
Corporation,

    *Defendants-Appellees.*

No. 08-35845

D.C. No.
06cv193-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
October 15, 2009—Seattle, Washington

Filed May 18, 2010

Before: Johnnie B. Rawlinson and Consuelo M. Callahan,
Circuit Judges, and Larry A. Burns,* District Judge.

Opinion by Judge Burns;
Concurrence by Judge Callahan

---

 *The Honorable Larry Alan Burns, District Judge for the Southern District of California, sitting by designation.

## COUNSEL

John A. Kutzman, Paoli, Latino & Kutzman, P.C., Missoula, Montana, for the plaintiff-appellant.

Jacquelyn M. Hughes, Hedger Friend, P.L.L.C., Billings, Montana, for the defendants-appellees.

## OPINION

BURNS, District Judge:

John Schmidt appeals the district court's grant of summary judgment in favor of Defendant Burlington Northern and Santa Fe Railway Company (BNSF) on his negligent injury claim under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* The district court found Schmidt did not present adequate evidence to show he was employed by BNSF. We disagree, and conclude Schmidt's evidence raises a triable issue of fact as to whether BNSF was his employer.

## Background

BNSF is a major railway company and is engaged in interstate commerce. Schmidt was originally hired in 1975 by Western Fruit Express (WFE), a wholly-owned subsidiary of BNSF. WFE does not transport passengers or goods but provides, maintains, and repairs refrigerated cars and trailers for use by BNSF and other railroad lines. WFE and BNSF maintain joint facilities at Hillyard, in Spokane, Washington.

Schmidt was employed by either BNSF or WFE or both intermittently from 1975 through 1999, when he was furloughed. He was recalled to work in 2003, but BNSF's medical officer determined he was not fit to return to duty because a medical exam uncovered he had suffered a severe neck injury. Schmidt maintains his neck injury resulted from welding assignments he performed from 1992 through 1999 in the car shop in Spokane, and blames the injury on his supervisors' negligence. According to Schmidt, he worked almost continuously on projects that required hours of welding underneath railroad cars while wearing a welding hood and hard hat.

Schmidt offered the following evidence[1] in support of his

---

[1] BNSF submitted contrary evidence to show Schmidt was employed by WFE, but we need not concern ourselves with it since the district court

contention that BNSF, and not WFE, was his employer during the relevant time period:

- Schmidt applied in 1975 at a Burlington Northern office to work for Burlington Northern.

- The official who first hired him in 1975 told him he was a Burlington Northern employee.

- Some of Schmidt's coworkers in the welding shop thought they worked for BNSF.

- Signage on the premises and railroad cars named BNSF, or both BNSF and WFE.

- There were two railroad car shops on the premises where Schmidt worked, one marked with a sign bearing BNSF's name only and the other bearing BNSF's and WFE's names; he worked in the latter.

- Workers' and supervisors' hard hats had BNSF logos.

- Correspondence from BNSF addressed Schmidt as "employee" or by a work title indicating he worked for BNSF.

- BNSF provided Schmidt and other workers with gloves and gave them vouchers for boots.

- Schmidt was given a summary plan description for the BNSF Retirement Plan.

---

granted summary judgment based on the inadequacy of Schmidt's evidence that he was a BNSF employee.

- BNSF handled Schmidt's payroll, and its name was on his pay stubs. Some of his pay statements mentioned that BNSF was paying him on behalf of WFE.

- BNSF required and provided or sponsored training in job skills, safety, and avoiding discrimination and harassment.

- Workers from the BNSF main shop attended weekly and monthly safety meetings attended by workers in Schmidt's shop.

- Schmidt's injuries can be traced at least in part to welding work he did on railroad cars for BNSF.

- When Schmidt was welding BNSF's cars, he was required by BNSF policy to wear a hard hat and welding hood.

- BNSF internal publications on the subject of safety records mentioned WFE workers as part of the BNSF workforce.

- The 2003 letter recalling Schmidt to work came from BNSF's senior manager for "Mechanical/TCU General Timekeeping and Analysis."

- When Schmidt was recalled, he was told to report to BNSF's mechanical department.

- BNSF acknowledged Schmidt's request to exercise his "seniority in the Mechanical Department of the Burlington Northern Santa Fe Railway."

- Schmidt was screened to return to work by BNSF's medical officer and BNSF paid for the medical exam.

FELA authorizes employees of railroads engaged in interstate commerce to sue their employers for negligent injury in the course of employment. 45 U.S.C. § 51. It is undisputed BNSF is a railroad within this provision, but WFE is not. If WFE was Schmidt's sole employer, his remedies would be limited to worker's compensation. If BNSF was his employer, FELA provides for the recovery of additional damages.

## Discussion

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A]ll reasonable inferences are to be drawn in favor of the non-moving party." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). The evidence must be enough for a "reasonable trier of fact" to find for the plaintiff. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). We review the granting of summary judgment de novo. *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 811 (9th Cir. 2004).

[1] Under FELA, the test of whether a company is the employer of a particular worker turns on the degree of control the company exerts over the physical conduct of the worker in the performance of services. *Kelley v. Southern Pac. Co.*, 419 U.S. 318, 324 (1974). *Kelley* recognizes three different theories of control, derived from common law, by which a plaintiff can establish employment for FELA purposes. "First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. . . . Second, he could be deemed to be acting for two masters simultaneously. . . . Finally, he could be a subservant of a company that was in turn a servant of the railroad." *Id.* (citations omitted). In proceedings before the district court, Schmidt pursued his claims primarily under the third *Kelley* theory, the "subservant" theory.[2]

---

[2]Schmidt also argued he was employed by BNSF exclusively, but the evidence does not support his contention.

Although he now argues he could have brought his claims under *Kelley*'s second theory, the "joint employer" theory, he concedes he did not argue this below, and we therefore treat the argument as waived. *Brazil v. United States Dep't of Navy,* 66 F.3d 193, 198-99 (9th Cir. 1995).

**[2]** To prove WFE was BNSF's servant, Schmidt must establish BNSF controlled or had the right to control the physical conduct of WFE's employees in the course of the work during which the injury allegedly occurred. *Kelley,* 419 U.S. at 325. The subservant theory presupposes the existence of two separate entities in a master-servant relationship. A plaintiff can proceed under this theory by showing his employer was the common-law servant of the defendant railroad such that the railroad controlled or had the right to control the employer's daily operations. *Id.* A plaintiff must also show he was "employed to perform services in the affairs of [the defendant railroad] and . . . with respect to the physical conduct in the performance of the services [was] subject to [that railroad's] control or right to control." *Id.* at 324 (quoting Restatement (Second) of Agency § 220(1)). For Schmidt to succeed under the subservant theory, he must show BNSF controlled or had the right to control his physical conduct on the job. *Id.* It is not enough for him to merely show WFE was the railroad's agent, or that he was acting to fulfill the railroad's obligations; BNSF's generalized oversight of Schmidt, without physical control or the right to exercise physical control of his daily work is insufficient. *Id.* at 325-26; *Lodge 1858, Am. Fed'n of Gov't Employees v. Webb*, 580 F.2d 496, 504 (D.C.Cir. 1978).

The Restatement lists factors relevant to determining whether a master-servant relationship exists. *Kelley*, 419 U.S. 335 (Douglas, J., dissenting) (citing Restatement (Second) of Agency § 220, comment c; § 227, comment a; *Baker v. Texas & Pac. Ry. Co.*, 359 U.S. 227, 228 (1959)). They include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Restatement, § 220(2).[3]

[3] Applying these factors, we conclude Schmidt's evidence could reasonably support a finding that WFE was

---

[3]In 2006 the Restatement (Second) of Agency was superseded by the Restatement (Third) of Agency, which uses "employer" and "employee" rather than "master" and "servant," Restatement (Third) of Agency, § 2.04, comment a, and defines an employee simply as a type of agent subject to a principal's control. *Id.*, § 7.07(3)(a).

BNSF's servant, and that BNSF had the right to control
WFE's employees, including Schmidt. For example, Schmidt
offered evidence that BNSF's policies regulated how he car-
ried out the welding work which may have caused his inju-
ries, and required Schmidt to participate in its safety and job
skills training along with BNSF and WFE employees. In addi-
tion, Schmidt's supervisors wore BNSF logos on their work
clothing, suggesting they may have been BNSF's agents, and
indirectly suggesting BNSF controlled how Schmidt did his
work. And, it was BNSF's own medical officer who deter-
mined Schmidt was unable to return to work, which could
support a finding that BNSF controlled who worked for WFE.
Also bolstering the inference of a close link between BNSF
and WFE, BNSF actually issued Schmidt's paychecks. Con-
sidered cumulatively, Schmidt's evidence might persuade a
reasonable jury that BNSF had the right to exercise day-to-
day control over the jobs of WFE's employees.

That other WFE employees with similar job responsibilities
said they thought they worked for BNSF, though not determi-
native, is relevant as well. *Vanskike v. ACF Indus., Inc.*, 665
F.2d 188, 199 (8th Cir. 1981) ("The belief of an employee as
to who is his employer is a fact to be considered in determin-
ing whether a master-servant relationship exists.") Statements
in BNSF's productivity reports, circulated internally, also
suggest that BNSF may have regarded WFE as part of itself
and therefore within its control. *See* Restatement, § 220(2)(i)
(listing, as one factor to be considered, the parties' belief
about their relationship). In the same way, statements by
BNSF's management referring to Schmidt as a BNSF
employee and treating him as subject to its control tend to
show BNSF regarded Schmidt as one of the company's own
employees.

**[4]** The district court found no evidence BNSF actually
controlled WFE's employees' daily work, and on that basis
granted summary judgment. While we agree the evidence
BNSF exercised actual day-to-day control is scant, the district

court did not consider whether BNSF had the *right to control* Schmidt's daily work. On this point, we conclude Schmidt presented adequate evidence for a rational jury to find BNSF could control critical aspects of his daily work, including those aspects that may have caused his injury. For this reason, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED**.

CALLAHAN, Circuit Judge, Concurring:

I concur with my colleagues that the district court's grant of summary judgment was premature. On the record before us, there is enough evidence to raise a material issue of fact as to whether Burlington Northern & Santa Fe Railway Company ("BNSF") controlled John Schmidt's ("Schmidt") day-to-day work activities at the time that he was injured. *See, e.g.*, *Baker v. Texas & Pac. Ry. Co.*, 359 U.S. 227, 228 (1959) (explaining that the question of whether an individual is an employee of a railroad for the purpose of FELA is generally a question of fact). I write separately to make two points.

First, both the majority's comments about or interpretations of the facts, as well as their conclusion that, "Schmidt presented adequate evidence for a rational jury to find BNSF could control critical aspects of his daily work, including those aspects that caused his injury," are made in the context of a motion for summary judgment when the record is viewed in the most favorable light to Schmidt: the majority is not weighing the evidence or making credibility determinations.[1]

[1]A few examples to illustrate my concerns: while the majority states that "Schmidt offered evidence that BNSF's policies regulated how he carried out the welding work which may have caused his injuries, and required Schmidt to participate in its safety and job skills training along

*See, e.g., Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1117-18 (9th Cir. 2009) ("When determining whether a genuine issue of material fact remains for trial, we must view the evidence and all inferences therefrom in the light most favorable to the non-moving party and may not weigh the evidence or make credibility determinations."); *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1140-41 (9th Cir. 2003) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Second, as the majority makes clear, "to prove WFE was BNSF's servant, Schmidt must establish BNSF controlled or had the right to control the physical conduct of WFE's employees in the course of the work during which the injury allegedly occurred." *See Kelley v. Southern Pac. Co.*, 419 U.S. 318, 325 (1974). Therefore, the focus on remand should be whether the railroad controlled or had the right to control

with BNSF and WFE employees," the record is not at all clear on this point as none of the workplace policies or training cited by Schmidt appear to be directly related to welding work. Further, the majority states that Schmidt's supervisors wore BNSF logos on their clothing and notes that Schmidt provided evidence that BNSF may exercise some control over some of WFE's administrative functions (*e.g.*, issuing checks, providing medical services), but whether BNSF merely provided uniforms and administrative functions to its subsidiary without any control over the day-to-day functions of WFE's employees, or whether BNSF employees exercised (or had the right to exercise) control over WFE's employees are issues that must be left to the jury to decide. Also, the majority's assertion that "statements by BNSF's management referring to Schmidt as a BNSF employee and treating him as subject to its control tend to show BNSF regarded Schmidt as one of the company's own employees" is problematic because it is unclear what "statements" the majority is referring to. The primary "statements" in the record are mass mailings regarding general company issues, such as eligibility for benefits, and many were sent outside the relevant time period. Although the letters may be indirect evidence of BNSF's control, their weight should be left to the jury to decide.

Schmidt's welding work during the 1992-1999 time period when he alleges he was injured. *See id.*[2] Evidence of the railroad's control of some of WFE's administrative functions, for example, while indicative of a certain level of control, may not be sufficient, without more, to show control over Schmidt's welding activities.

---

[2]Since *Kelley* was decided, circuit opinions analyzing the issue of FELA liability under any of the three prongs of *Kelley* have uniformly focused on whether the railroad controlled or had the right to control the plaintiff at the time of his injury. *See Dixon v. CSX Transp. Inc.*, 990 F.2d 1440, 1445-48 (4th Cir. 1993) (holding that where an individual could not show that, at the time of the accident, he was employed to perform services for the railroad, or was subject to the control of the railroad, then he was not an employee for FELA liability purposes); *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348-52 (3d Cir. 1991) (holding that an individual who worked for a wholly-owned subsidiary of a railroad had shown sufficient evidence that he was under the control and direction of the railroad at the time of his accident to defeat summary judgment); *Warrington v. Elgin Joliet & Eastern Ry. Co.*, 901F.2d 88, 90-91 (7th Cir. 1990) (holding that an individual proceeding under the subservant theory failed to show that at the time of the accident he or other employees of the allegedly servant company were performing work for the railroad); *Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322, 1324-25 (5th Cir. 1985) (holding that there were sufficient facts to support the plaintiff's contention that the railroad had a significant supervisory role over him at the time of his accident); *Bradsher v. Mo. Pac. R.R.*, 679 F.2d 1253, 1257-58 (8th Cir. 1985) (holding that genuine issue of material fact existed where individual presented evidence that he worked under direction and control of railroad employees on railroad property at the time he was injured); *Vanskike v. ACF Indus. Inc.*, 665 F.2d 188, 198-200 (8th Cir. 1981) (holding there was sufficient evidence to demonstrate that the railroad "exercised actual control and supervision at the time of the accident").