CALLAHAN, Circuit Judge,
Concurring:
I concur with my colleagues that the district court’s grant of summary judgment was premature. On the record before us, there is enough evidence to raise a material issue of fact as to whether Burlington Northern & Santa Fe Railway Company (“BNSF”) controlled John Schmidt’s (“Schmidt”) day-to-day work activities at the time that he was injured. See, e.g., Baker v. Texas & Pac. Ry. Co., 359 U.S. 227, 228, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959) (explaining that the question of whether an individual is an employee of a railroad for the purpose of FELA is generally a question of fact). I write separately to make two points.
First, both the majority’s comments about or interpretations of the facts, as well as their conclusion that, “Schmidt presented adequate evidence for a rational jury to find BNSF could control critical aspects of his daily work, including those aspects that caused his injury,” are made in the context of a motion for summary judgment when the record is viewed in the most favorable light to Schmidt: the majority is not weighing the evidence or making credibility determinations.[1] See, e.g., *692 Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1117-18 (9th Cir.2009) (“When determining whether a genuine issue of material fact remains for trial, we must view the evidence and all inferences therefrom in the light most favorable to the non-moving party and may not weigh the evidence or make credibility determinations.”); Suzuki Motor Corp. v. Consumers Union of U.S., Inc., 330 F.3d 1110, 1140-41 (9th Cir.2003) (“Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.”).
Second, as the majority makes clear, “to prove WFE was BNSF’s servant, Schmidt must establish BNSF controlled or had the right to control the physical conduct of WFE’s employees in the course of the work during which the injury allegedly occurred.” See Kelley v. Southern Pac. Co., 419 U.S. 318, 325, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). Therefore, the focus on remand should be whether the railroad controlled or had the right to control Schmidt’s welding work during the 1992-1999 time period when he alleges he was injured. See id.[2] Evidence of the rail *693 road’s control of some of WFE’s administrative functions, for example, while indicative of a certain level of control, may not be sufficient, without more, to show control over Schmidt’s welding activities.

. A few examples to illustrate my concerns: while the majority states that “Schmidt offered evidence that BNSF’s policies regulated how he carried out the welding work which may have caused his injuries, and required Schmidt to participate in its safety and job skills training along with BNSF and WFE employees,” the record is not at all clear on *692 this point as none of the workplace policies or training cited by Schmidt appear to be directly related to welding work. Further, the majority states that Schmidt’s supervisors wore BNSF logos on their clothing and notes that Schmidt provided evidence that BNSF may exercise some control over some of WFE's administrative functions (e.g., issuing checks, providing medical services), but whether BNSF merely provided uniforms and administrative functions to its subsidiary without any control over the day-to-day functions of WFE’s employees, or whether BNSF employees exercised (or had the right to exercise) control over WFE's employees are issues that must be left to the jury to decide. Also, the majority's assertion that “statements by BNSF's management referring to Schmidt as a BNSF employee and treating him as subject to its control tend to show BNSF regarded Schmidt as one of the company’s own employees” is problematic because it is unclear what “statements” the majority is referring to. The primary "statements” in the record are mass mailings regarding general company issues, such as eligibility for benefits, and many were sent outside the relevant time period. Although the letters may be indirect evidence of BNSF's control, their weight should be left to the jury to decide.

. Since Kelley was decided, circuit opinions analyzing the issue of FELA liability under any of the three prongs of Kelley have uniformly focused on whether the railroad controlled or had the right to control the plaintiff at the time of his injury. See Dixon v. CSX Transp. Inc., 990 F.2d 1440, 1445-48 (4th Cir.1993) (holding that where an individual could not show that, at the time of the accident, he was employed to perform services for the railroad, or was subject to the control of the railroad, then he was not an employee for FELA liability purposes); Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1348-52 (3d Cir.1991) (holding that an individual who worked for a wholly-owned subsidiary of a railroad had shown sufficient evidence that he was under the control and direction of the railroad at the time of his accident to defeat summary judgment); Warrington v. Elgin Joliet & Eastern Ry. Co., 901 F.2d 88, 90-91 (7th Cir.1990) (holding that an individual proceeding under the subservant theory failed to show that at the time of the accident he or other employees of the allegedly servant company were performing work for the railroad); Lindsey v. Louisville & Nashville R.R. Co., 775 F.2d 1322, 1324-25 (5th Cir.1985) (holding that there were sufficient facts to support the plaintiff's contention that the railroad had a significant supervisory role over him at the time of his accident); Bradsher v. Mo. Pac. R.R., 679 F.2d 1253, 1257-58 (8th Cir.1985) (holding that genuine issue of material fact existed where individual presented evidence that he worked under direction and control of railroad employees on railroad property at the time he was injured); Vanskike v. ACF Indus. Inc., 665 F.2d 188, 198-200 (8th Cir. 1981) (holding there was sufficient evidence to demonstrate that the railroad “exercised actual control and supervision at the time of the accident”).